# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BABYAGE.COM, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:07-cv-01600-ARC** |
| | : | |
| **v.** | : | **Judge Caputo** |
| | : | |
| **LEACHCO, INC.,** | : | **Filed Electronically** |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S MARKMAN MEMORANDUM

Plaintiff BABYAGE.COM, INC. ("BabyAge"), through undersigned counsel, herewith submits its *Markman* Memorandum. The Court directed the parties to submit their memoranda in support of their respective positions regarding interpretation of the claims of U.S. Patent No. 6,760,934 for a Symmetrically Contoured Support Pillow ("the '934 Patent").

## INTRODUCTION

Analysis of patent infringement involves two steps. First, the Court must properly construe the asserted claims. Second, based on proper claim construction, the Court determines whether the accused device infringes the asserted claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). A *Markman* hearing addresses the first step of the analysis: proper construction of the claims.

Claim construction is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Where, as here, the Court's

Dockets.Justia.com

jurisdiction is based in whole or part on 28 U.S.C. § 1338, the United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction. 28 U.S.C. § 1295(a)(1). Accordingly, case law from the Federal Circuit is binding on this Court.

In interpreting patent claims, the court should first look to the intrinsic evidence of record. Intrinsic evidence includes the patent itself, including the claims, specification, and, if in evidence, the prosecution history. *Vitronics,* 90 F.3d at 1582. When possible, a claim should be construed so as to sustain its validity. *Whittaker Corp. ex rel. Technibilt Div. v. UNR Indus.,* 911 F.2d 709, 712 (Fed. Cir. 1990). In determining the meaning of the disputed claim, the court begins with the words of a claim. Words in a claim should be given the "ordinary and customary meaning" that such terms would have to a "person of ordinary skill in the art in question" at the time of the invention—that is, as of the effective filing date of the patent application. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). In some cases, however, the ordinary meaning of claim language as understood by a person of skill in the art "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

Patents are generally understood to be addressed to, and intended to be read by, inventors skilled in the pertinent art. Thus, for purposes of claim construction, it is assumed that the person of ordinary skill in the art has read the patent in its entirety with an understanding of the claim terms' meaning in the applicable field, and has knowledge of any special meaning and usage in the field. The inquiry into how a person of ordinary skill in the

art understands a claim term provides "an objective baseline from which to begin claim interpretation." *Id.* at 1313. The patent specification is usually considered the best guide to the meaning of a disputed term. This is because the patent is statutorily required to include a description of the invention in "full, clear, concise, and exact terms." In addition to revealing a special definition given to a claim term by the patentee, the specification may contain an intentional disclaimer of claim scope. *Id.* at 1315-16 (citing 35 U.S.C. § 112).

Although terms are generally construed in accordance with their ordinary meaning, the patentee may choose to "be his own lexicographer" and use terms other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history. *Vitronics*, 90 F.3d at 1582. Thus, in examining the patent's intrinsic evidence, the Court may consider the prosecution history of the patent. This history contains the complete record of all the proceedings before the Patent Office, including any express representations made by the applicant regarding the scope of the claims. *Id.*

If the meaning of the patent is not apparent from the intrinsic evidence, then the Court may consider extrinsic evidence. *Id.* at 1583. Extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises, which the Court may, in its discretion, use if helpful. *Phillips*, 415 F.3d at 1317-19. Extrinsic evidence may not be used to vary or contradict the claim language, and it may not be used to contradict other parts of the specification. *Vitronics*, 90 F.3d at 1584. Because the meaning of the disputed phrases in this case can be determined from the intrinsic evidence, the Court need not consider any

extrinsic evidence, except for dictionary definitions corroborating the interpretation proposed by Plaintiff.

## CLAIM CONSTRUCTION

In claim construction analysis, "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Synthes (U.S.A.) v. Howmedica Osteonics Corp.*, 2008 WL 783569, at *3 (E.D. Pa. 2008) (Brody, J.) (citing *Vivid Techs. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)). In this case, the '934 Patent describes a simple invention, requiring only one independent claim and two dependent claims. The independent claim reads as follows:

> A symmetrically contoured support pillow formed essentially in an inverted U-shape, comprising essentially a semi-circular crown and a pair of spaced symmetrical legs extending downwardly and outwardly divergently away from the crown, the legs having lower ends which are curved inwardly toward each other and forming toes, each leg having a convex bulge extending inwardly in the space between the two legs, the bulges extending towards each other, the resulting space between the legs as formed by the convex bulges being essentially in the shape of an hourglass.

The preferred embodiment of the invention illustrates the components of the invention, using nontechnical terms. The patent describes a "semi-circular crown" which is used to support the user's head. The second component of the patent comprises "two symmetrically and downwardly extending legs which represent the legs of the 'U'." The third component is composed of "a pair of toes that are curved inwardly towards each other such that they abut or touch each other." Finally, the legs are "provided convex bulges essentially

4

midway of the length of the legs, and these bulges project inwardly towards each other." The interior open space of the pillow is described as having the shape of an "hourglass."

The Federal Circuit has established that proving direct infringement requires a two-step analysis:

> The claimed invention must first be defined, a legal question of claim interpretation. Second, the trier of fact must determine whether the claims, as properly interpreted, cover the accused device or process . . . the burden of proof is on [the] patent owner, to prove infringement by a preponderance of the evidence. Such proof must show that every limitation of the patent claims asserted to be infringed is found in the accused device, either literally or by an equivalent.

*SmithKline Diagnostics v. Helena Labs. Corp.,* 859 F.2d 878, 889 (Fed. Cir. 1988).

### A.     Semi-Circular Crown

With the foregoing standard in mind, the claims may be interpreted in light of the specifications and the diagrams illustrating the preferred embodiment. Claim 1 calls for a "semi-circular crown," which provides support for the woman user's head. The functional significance of the "semi-circular crown" is emphasized in the specifications. Thus, the invention can be used in alternative ways. The "pillow can be wrapped around the user in a seated position with the semi-circular crown encircling the stomach area of the user." Again alternatively, "[t]he toes can also function as a head support when overlapped, with the semi-circular crown being positioned between the legs of the user." On each occasion, the specification emphasizes that the "crown" of the pillow is "semi-circular." The dictionary defines "semi-circular" as "having the form of a half circle." Webster's New 20th Century

Dictionary (2d ed. 1975) ("Webster's"). The description of the embodiments refers to "the semi-circular arch" of the crown of the pillow.

By no stretch of the imagination could the upper portion or "crown" of the accused device, Exhibit C of the complaint, be characterized as "semi-circular." Instead, it describes a straight edge terminating in a configuration of the legs and the top of the pillow at a 90° angle. Even the most cursory visual comparison of the diagram of the preferred embodiment of the '934 Patent and BabyAge's Cozy Comfort pillow discloses this distinguishing feature. The '934 Patent has a "semi-circular" crown, while the legs of the accused device are squared off where they terminate at the top of the pillow. As distinct from the embodiment of the '934 Patent, in which the crown meets the legs in a curved manner, the legs and the top of BabAge's Cozy Comfort pillow describe a 90° angle. The two products, in other words, are different visually in design and in construction in this as in other respects discussed below.


**B.      Legs Extending Downwardly And Outwardly Divergently Away From The Crown**

Claim 1 explicitly describes "a pair of spaced symmetrical legs extending downwardly and outwardly divergently away from the crown[.]" Indeed, the shape of the preferred embodiment, as it appears in Fig. 3, is in a flattened oval or egg shape, the two legs extending "downwardly" and "outwardly divergently away from the crown," making the pillow wider at the bottom than at the top. The dictionary defines "diverge" as "[going] in different directions from a common point or from each other; opposed to converge; as the sides of an angle *diverge* from the apex." "Divergent" is defined as "departing or going in different

directions from each other." Webster's. One of the elements of Claim 1 is this feature of "divergent" legs of the pillow, forming an ellipsoid or egg-shaped pillow.

The accused device, in contrast, presents legs which do extend downwardly from the top of the pillow, but they do not extend "outwardly." The legs do not extend "divergently" from the top or crown of the pillow. Instead, the legs of the accused device extend at a 90° angle from the terminus at the top of the pillow. Although Claim 1 refers to the invention as having a "U-shape," in fact it is more in the nature of a "V-shape," while the accused device assumes more of a "U-shape." But the important point is that the invention described in the '934 Patent and the accused device are completely distinct from the construction standpoint and dissimilar visually. If the two devices appeared immediately adjacent to each other on a retail dealer's shelf, even the least perceptive consumer would have no difficulty differentiating the two products.

In distinguishing the prior art, this particular construction element of the invention is emphasized. "The instant pillow naturally comes together towards itself, with a spring like quality." This asserted feature of the '934 Patent distinguishes it not only from the prior art but also from the accused device as well, the arms of which are straight, not curvilinear.


C.    Overlapping Toes

Defendant asserts that the overlapping toes design feature of the invention provides a particular function for the user. As the inventor asserts in the specification:

> Turning now to the further consideration of FIG. 3, if the toes 18 and 20 are pulled more towards each other so that a greater degree of overlapping

occurs as compared to what is shown in FIG. 3, the toe sections can be pulled to the extent that the bulges 22 and 24 actually touch each other. In this condition an individual lying on the pillow would get full back support by the contiguous bulges 22 and 24.

Because the design and construction of the legs of the accused device differ from those of the invention in that the legs of the former are straight and parallel, as opposed to being "outwardly diverging" in the '934 Patent, the foregoing "overlapping toes" feature is not present in the accused device. This design element of the '934 Patent appears in Claim 1. Furthermore, Claim 3 is even more explicit in requiring that "the toes are moved towards each other to create an overlapping condition," such that "the head of the woman is adapted to rest on the overlapping toes[.]" The accused device has no "overlapping toes" because the legs are straight and parallel, rather than curved. Thus, the legs of the accused device terminate in a fixed position, as opposed to adapting to an "overlapping" position, as the inventor claims, by virtue of the legs being curved in shape.

## CONCLUSION

The '934 Patent does not describe an invention of particular originality. Instead, it represents an improvement of a mature and well-developed art, as the references of the patent reflect. Accordingly, the claims should be given a narrow, as opposed to a broad interpretation. *Cardiac Pacemakers, Inc. v. Coratomic, Inc.*, 535 F. Supp. 280, 286 (D. Minn. 1982) ("Patent claims cannot be interpreted narrowly to avoid anticipation or obviousness and then construed broadly to establish infringement."). Claim 1, the only

independent claim, is not literally infringed, so dependent Claims 2 and 3 cannot be infringed as a matter of law. This is a case uniquely susceptible to resolution by summary judgment.

> To prevail under a theory of literal infringement, plaintiffs must prove that each and every limitation of independent claim 1 is matched exactly by a corresponding element in Brunswick's StealthCore I[TM] and II bowling balls . . . . Any deviation from the claim limitations precludes a finding of literal infringement. *Id.* If claim 1 is not infringed, it follows that none of its dependent claims are infringed. . . .

> Determining whether the StealthCore I[TM] and II bowling balls infringe claim 1 of the '731 patent entails a two-step analysis. First, claim 1 must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused products to determine whether infringement has occurred. . . . The first step, claim construction, is a question of law. . . . The second step, applying the claim construction to the accused device, is a question of fact. Where, as here, the parties do not dispute any facts relevant to the question of literal infringement but disagree over the proper claim construction, the question of literal infringement collapses into claim construction and is amenable to summary judgment.

*Zelinski v. Brunswick Corp.*, 996 F. Supp. 757, 759 (N.D. Ill. 1997), *aff'd*, 185 F.3d 1311 (Fed. Cir. 1998) (citations omitted); *see also Zaidan v. Borg-Warner Corp.*, 281 F. Supp. 72, 75 (E.D. Pa. 1968) ("In my view there are no genuine issues of fact. The devices here in dispute are relatively uncomplicated and capable of comprehension by persons of ordinary intelligence without the aid of experts. . . . The only issues here involve construction of the claims of plaintiff's patent. Construction of claims is properly a matter of law for the court.").

Accordingly, it is requested that the Court interpret the claims as suggested by Plaintiff and enter a judgment of noninfringement in Plaintiff's favor.

Respectfully submitted,

/s/ Andrew J. Katsock, III
Andrew J. Katsock III, Esquire
Bar No. 59011
15 Sunrise Drive
Wilkes-Barre, PA 18705
Telephone: (570) 829-5884

## CERTIFICATE OF SERVICE

I, ANDREW J. KATSOCK III, do hereby certify that copies of the foregoing Memorandum were served on all opposing counsel this __10th__ day of __July__ 2008, by mailing one to each of them, first-class postage prepaid, at the following addressees:

Sean V. Kemether, Esquire
Kelly Grimes Pietrangelo & Vakil, P.C.
P.O. Box 1048
Media, PA 19063-0848

Gary Peterson, Esquire
211 N. Robinson Street
Suite 450 South
Oklahoma City, OK 73102

/s/ Andrew J. Katsock, III
Andrew J. Katsock III, Esquire