IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BABYAGE.COM, INC., )
)
    Plaintiff-Counterclaim Defendant, )
)
v. )
)
LEACHCO, INC., )
)
    Defendant-Counterclaim Plaintiff/ )
    Third Party Plaintiff, )  No. 3:07-cv-01600-ARC
)
and )  (Judge A. Richard Caputo)
)
JAMIE S. LEACH, )  (electronically filed)
)
    Counterclaim Plaintiff/ )
    Third Party Plaintiff, )
)
v. )
)
JOHN M. KIEFER, JR., )
)
    Third Party Defendant. )

**PATENT CLAIM CONSTRUCTION BRIEF
OF LEACHCO, INC. AND JAMIE S. LEACH**

We offer the following constructions of contested terms in the claims of U.S. Patent No. 6,760,934, the patent in suit. A copy of the patent appears as Exhibit A.

    **A.    "Semi-Circular Crown."**

Claim 1 defines a pillow that includes, among other elements, a "semi-circular crown." Because the patent provides no special definition for the term, the Court must apply the "ordinary and customary meaning" of this term, as understood by "a person of ordinary skill in the art in question at the time of the invention." See *Phillips v.*

1

*AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). Dictionaries may be useful in ascertaining this meaning. See *Phillips*, 415 F.3d at 1318.

The dictionary definition of "crown" is a "circular ornamental headdress worn by a monarch ...." See New Oxford American Dictionary at 406 (2nd ed. 2005) (copy attached as Exhibit B). This definition is consistent with how the term "crown" is used in the patent: to designate the section of the pillow that contacts the head of the user. See, *e.g.*, Exhibit A, column 3, lines 40-41 ("semi-circular crown 12 for the user's head to rest against ..."); column 5, claim 2 ("the crown is designed to support the head of a woman ...").

If a "crown" is a "circular ornamental headdress," what part of the crown has to be circular? According to our opponents, **all** parts of a "crown" must be circular. But this is not the ordinary and customary meaning of "crown." A crown must be circular only at its base, where it engages the head: otherwise the crown could not be worn. But the portions of a crown that do **not** contact the head need not be circular. Consider, for example, the Imperial State Crown of Great Britain, which is circular at its base, but has square corners at its top:



Under the ordinary and customary meaning of "crown," a crown need be circular only at its base.

Our opponents contend that, because the drawings in the patent show a crown that is semi-circular at both its base and its top, the term "semi-circular crown" should be construed as requiring **two** curved surfaces, rather than just a curved base. However, the patent expressly states that the embodiments shown in the drawings are merely "preferred," and not the sole means of practicing the invention. See Exhibit A, column 3, lines 35-36. "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." See *Phillips*, 415 F.3d at 1323. The narrow definition of "semi-circular crown" that our opponents seek to infer from the patent drawings and specification violates this important legal principle.

In construing "semi-circular crown," our opponents are asking the Court to ignore the term "crown," and focus exclusively on "semi-circular." But such a construction would render the term "crown" wholly superfluous. The Federal Circuit has repeatedly rejected such claim constructions. See, *e.g.*, *General American Transportation Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) ("We therefore reject the district court's claim construction, which ... rendered superfluous the claim requirement for openings adjacent to the end walls").

The ordinary meaning of "crown" is a headdress having a circular base against which a user's head can rest. The term "semi-circular" modifies "crown," and is used

to highlight how the headdress differs from a conventional "crown," with a base that is semi-circular rather than fully circular. "Semi-circular crown," as used in the patent, means a section of the pillow having a semi-circular base against which a user's head can rest.

B. **"Outwardly Diverging Away From the Crown."**

Claim 1 of the patent further requires "legs extending downwardly and outwardly divergently away from the crown ...." The ordinary and customary meaning of "downwardly" is "toward the base." The ordinary and customary meaning of "outwardly" is "away from the interior." The ordinary and customary meaning of "divergently" is "drawing apart." "Legs extending downwardly and outwardly divergently away from the crown ..." means legs that extend toward the base of the pillow and which draw apart as they become more distant from the crown.

Claim 1 does **not** require that the legs of the pillow **always** diverge outwardly, since this will depend on how the pillow is arranged by the user. In fact, the text of the patent makes clear that the legs are capable of being arranged in any number of non-diverging configurations. For example, patent Figure 3 shows that the legs can be arranged so that they overlap one another at their base, and patent Figure 4 shows an arrangement in one of the legs that has been twisted around and placed underneath the user's head. See Exhibit A, column 4, lines 12-16. If the claim requires that the legs of the pillow **always** diverge outwardly, not matter how the pillow is arranged by a user, the preferred embodiments shown in the drawings would be outside the scope of

claim 1. Such a construction is "rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

The claim thus does not require that the legs always diverge outwardly. Instead, the claim requires only that the legs be reasonably capable of being arranged in such an outwardly divergent configuration. See *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) ("an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation").

### C. Overlapping Toes.

Claim 3 defines a support pillow in which "the toes are moved towards each other to create an overlapping condition" such that "the head of the woman is adapted to rest on the overlapping toes while one bulge is received in the curvature of the back of the woman and the other bulge is received in the tummy area of the woman." Exhibit A, column 6, lines 2-7. Much as with "divergent legs," the claim does not require that the toes **always** overlap, since this will be depend on how the pillow is configured by a user. For example, Figure 1 of the patent shows a configuration of the pillow in which the toes do not overlap, and instead are merely touching. See Exhibit A, column 3, line 46 ("the toes 18 and 20 will be just touching each other"). If the legs shown in Figure 1 are spread farther apart, the toes will not touch at all. If the claim required that the toes always overlap, no matter how the pillow is configured by the user, the claim would not cover the pillow that the patent describes as the inventor's

5

preferred embodiment -- a construction that would be "rarely, if ever, correct." *Vitronics Corp.,* 90 F.3d at 1583.

Claim 3 requires only that the toes be reasonably capable of being arranged in an overlapping position.

D. **Reference to the Accused Pillow for Purposes of Claim Construction.**

Our opponents have asked to Court to construe the patent claims by reference to a photograph of the accused pillow. There are several problems with this approach. First, and most importantly, the Federal Circuit has repeatedly held that patent claims may not be construed with reference to the accused product. See *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("claims may not be construed with reference to the accused device").

Second, even if reliance on a photograph of the accused pillow were appropriate, the Court should be aware that the Babyage pillow was deliberately arranged by our opponents in a non-divergent and non-overlapping configuration before it was photographed. It is equally possible to arrange the accused pillow such that the legs diverge and the toes overlap. For example, the attached Exhibit C is a photograph of the accused pillow **taken from Babyage's own web site**, which advertises the accused pillow and offers it for sale to the public. The Babyage website photo shows the accused pillow with legs arranged in a divergent configuration.

For purposes of assessing infringement, the only requirement is that the accused product be reasonably capable of satisfying the claim limitations, even if non-

6

infringing configurations are also possible. See *Hilgraeve*, 265 F.3d at 1343. As Exhibit C illustrates, the accused pillow is reasonably capable of being arranged with its legs outwardly diverging. The accused pillow is equally capable of being arranged with toes overlapping. Because the photograph offered by our opponents fail to accurately or completely portray the accused product, they should not be considered even if reference to such evidence were otherwise appropriate.

        Respectfully submitted,

        s/ Gary Peterson
        Gary Peterson
        OK 7068
        211 N. Robinson Ave., Suite 450 South
        Oklahoma City, OK 73102
        telephone:   (405) 606-3367
        fax:         (866) 628-0506
        email:       gp@garypeterson.com

        Sean V. Kemether
        PA 70816
        Kelly Grimes Pietrangelo & Vakil, P.C.
        P.O. Box 1048
        Media, PA 19063-0848
        telephone:   610-565-2669
        fax:         610-565-0780
        email:       skemether@kgpv.com

        Attorneys for Defendant and Counterclaim Plaintiffs

CERTIFICATE OF SERVICE

I certify that I electronically transmitted this document to the Clerk using the ECF System so as to cause transmittal of a Notice of a Electronic Filing to the following ECF registrant:

    Andrew J. Katsock, III

Attorney for Defendant, on July 11, 2008.


                                                s/ Gary Peterson