UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BABYAGE.COM, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 3:07-cv-01600-ARC |
| | : | |
| v. | : | Judge Caputo |
| | : | |
| LEACHCO, INC., | : | Filed Electronically |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S**
**MARKMAN MEMORANDUM**

Plaintiff BABYAGE.COM, INC. ("BabyAge"), through undersigned counsel, herewith submits its Reply to Defendant's *Markman* Memorandum. BabyAge will not delay the Court's decision in this case by offering more than a few comments in reply.

## INTRODUCTION

Defendant LEACHCO, INC. ("Leachco"), offers two legal points and three factual issues, none of which need detain the Court for long. Leachco sets up the straw man and then purports to knock him down. Leachco puts into BabyAge's mouth the argument that BabyAge is attempting to use the diagram of the preferred embodiment as a means of limiting the claim. The law is clear, and BabyAge does not argue otherwise, that the preferred embodiment may not be used as a limitation of the claim(s). *See Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1341 (Fed. Cir. 1999). But the diagram that

1

was submitted with the application can be used, as can any other intrinsic aid, to interpret the language used in the claims. The drawings, after all, were prepared on behalf of Leachco, not BabyAge, so they represent Leachco's illustration of its invention. BabyAge intends the drawings to carry no more weight than Leachco presumably intended to assign them.

Second, Leachco argues that interpretation of the claims should proceed without reference to the accused device.[1] That is correct as far as it goes, but with a simple device such as the one at issue here in which the claims language is well within the comprehension of nontechnical persons, it only makes sense to consider infringement in the course of the claims interpretation process. This is a case that cries out for resolution by way of summary judgment, a point that was made previously.

> Claim construction begins with the words of the claims themselves. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006); *Phillips*, 415 F.3d at 1312. The task of comprehending these words is not always a difficult one. "'In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.'" *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007)[.]

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 540 F. Supp. 2d 1233, 1240 (M.D. Fla. 2008).

Furthermore, it is entirely appropriate for a competitor to assign a practical construction to the claims and then use that construction as a basis for designing around the patent. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)

---

[1] Leachco neglects to follow its own advice. (See Leachco's Memorandum at 5 and the discussion accompanying the citation of *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001).)

("[C]ompetitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention."). That is precisely what BabyAge has done here.

Leachco makes two factual arguments relating to interpretation of the claims. Claim 1 refers to the invention as having an "inverted U-shape," with "essentially a semi-circular crown." All those words are commonly used in ordinary speech and are easily understood. The word "crown" refers, presumably, to the upper, as opposed to the lower portion of the pillow. It has a semi-circular shape, as the diagram of the preferred embodiment illustrates. Leachco's proposed interpretation of the word "crown" is preposterous. The term is used not because of the similarity of the invention to the emblem of the British monarchy, Queen Elizabeth's crown, but rather to differentiate the upper portion of the invention from the lower portion or "toes" of the invention.

Rare is the royal crown that is in an "inverted U-shape," as Claim 1 describes the invention. It is plausible for Leachco to use the word "crown" in a metaphorical sense, precisely as it has used the words "legs" and "toes" in a metaphorical sense. They are not literal "legs" and "toes," any more than the top of the pillow is a royal "crown." It will not do for Leachco to insist on a literal interpretation of some of the words of the claim when it suits Leachco's purpose to do so, yet at the same time insist on a metaphorical use of other words when it is convenient for Leachco to do so.

Claim 1 describes the upper portion or "crown" of the pillow as being "semi-circular" in shape. The diagram of the preferred embodiment illustrates this feature of the invention

very well. It is not necessary for a pillow having a similar function to assume a "semi-circular" shape. A competitor reasonably reading the claims on the invention could well conclude that the "semi-circular" shape is a limitation of the claim. The competitor, having read the language as a limitation on the claim, could design a pillow which has a square or box-like shape for the "crown" of the pillow. For example, the competitor could design a pillow that describes a straight edge terminating in a configuration of the legs and the top of the pillow at a 90° angle. Such a pillow would not have the semi-circular design feature described as an element of the claim. And, of course, that is precisely what BabyAge has done. The only reasonable explanation for Leachco's tortured interpretation of the word "crown" is to read the limitation "semi-circular" out of its claim, making the claim broader and thus inclusive of other designs, like BabyAge's, that are square in profile, rather than semi-circular.

Leachco argues that the Court should ignore the literal language of the claim requiring that the invention have "a pair of spaced symmetrical legs extending downwardly and outwardly divergently away from the crown[.]" Leachco says that it is enough that the legs are capable of diverging outwardly. The simple response is, "That is not what the claim says." On the one hand, Leachco takes BabyAge to task for using one diagram of the preferred embodiment to *limit* the claim. On the other hand, it is fine for Leachco to use another diagram of the preferred embodiment to *expand* the claim. Leachco cannot have it both ways. The simple fact of the matter is that the claim says what it says. The language is not technical, and to Leachco's credit, the language is commendably clear. Leachco cannot

4

now back away from the language explicitly limiting its claim to make that same language, in the guise of interpretation, broad enough to claim infringement by BabyAge's device.

Leachco again uses the same technique of linguistic prestidigitation to attempt to expand the scope of the claim with respect to the configuration of the "toes" of the device. Claim 3 explicitly requires that "the toes are moved towards each other to create an overlapping condition," such that "the head of the woman is adapted to rest on the overlapping toes[.]" The claim language requires that the toes are overlapping. That is Leachco's language, and it speaks for itself. Now Leachco argues that by "overlapping" it did not mean "always overlapping." If that had been what was intended, then Leachco could have drafted the claim with broader language. Instead, in the guise of claim construction, Leachco would have the claim read as follows:

> [T]he toes are so configured that when the toes are moved towards each other, then they are capable of overlapping, but they may or may not create an overlapping condition.

Rather than interpret the claim language, Leachco invites the Court to rewrite the claim. This, of course, the Court is neither disposed nor authorized to do. Claims interpretation is a literalist exercise. The patentee is left with the claims exactly as they appear in the patent. A competitor has every right to read the language literally and to design a noninfringing device accordingly. If Leachco's approach were to be accepted, then there would be no certainty to the process of claims construction. If the claims are not read literally, then courts and competitors would be left with the impossible task of trying to ascertain what the patentee *meant*, not what it *said* in the patent claims.

> An accused device literally infringes a patent when it contains "every limitation in the asserted claims." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). A court cannot find literal infringement if one of the limitations is not present in the accused device or *if the device does not include the limitation exactly as it is claimed in the patent.*

*Sw. Bell Tel., L.P. v. Arthur Collins, Inc.*, 454 F. Supp. 2d 600, 607 (N.D. Tex. 2006) (emphasis added).

Accordingly, the interpretation of the claims proposed by BabyAge should be adopted and applied by the Court.

Respectfully submitted,

/s/ Andrew J. Katsock, III
Andrew J. Katsock III, Esquire
Bar No. 59011
15 Sunrise Drive
Wilkes-Barre, PA 18705
Telephone: (570) 829-5884

# CERTIFICATE OF SERVICE

I, ANDREW J. KATSOCK III, do hereby certify that copies of the foregoing Memorandum were served on all opposing counsel this 21st day of July 2008, by mailing one to each of them, first-class postage prepaid, at the following addressees:

Sean V. Kemether, Esquire
Kelly Grimes Pietrangelo & Vakil, P.C.
Post Office Box 1048
Media, PA 19063-0848

Gary Peterson, Esquire
211 North Robinson Street
Suite 450 South
Oklahoma City, OK 73102

/s/ Andrew J. Katsock, III
Andrew J. Katsock III, Esquire