UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BABYAGE.COM, INC., | : | |
| Plaintiff-Counterclaim Defendant | : | CIVIL ACTION NO. 3:07-CV-01600-ARC |
| | : | |
| v. | : | |
| | : | Judge A. Richard Caputo |
| LEACHCO, INC., | : | |
| | : | |
| Defendant-Counterclaim Plaintiff/ Third Party Plaintiff | : | Filed Electronically |
| | : | |
| and | : | |
| | : | |
| JAMIE S. LEACH, | : | |
| | : | |
| Counterclaim Plaintiff/ Third Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN M. KIEFER, JR., | : | |
| | : | |
| Third Party Defendant | : | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiff-Counterclaim Defendant, BabyAge.com, Inc. (hereinafter "BabyAge"), by and through its attorney, Andrew J. Katsock, III, Esquire, hereby submits this Memorandum in Support of Motion for Partial Summary Judgment. Filed herewith is the Declaration of John M. Kiefer, Jr.

## STATEMENT OF MATERIAL FACTS

BabyAge has submitted its Rule 56.1 Statement, which sets out the material facts that are undisputed. The Defendant-Counterclaim Plaintiff, Leachco, Inc., and Counterclaim Plaintiff, Jamie S. Leach (hereinafter collectively "Leachco"), have alleged two (2) counterclaims. The

first alleges patent infringement and the second alleges trademark infringement. The patent dispute has been substantially resolved by the Court's Markman Order, Mem. Op. 09/18/2008 (Civ. No. 3:CV-07-1600). Leachco's trademark claim is more exotic. Leachco alleges, and BabyAge readily concedes, that BabyAge sells its own products and those of Leachco by means of BabyAge's website, BabyAge.com (hereinafter "the Website"). There is no allegation that Leachco's products sold at the Website are represented as being anything but genuine and authentic products manufactured by or for Leachco and offered for sale by Leachco. Similarly, Leachco makes no allegation that any products not authorized for sale by Leachco are represented by BabyAge as being from Leachco. Simply put, Leachco alleges that its trademarks are infringed because BabyAge offers for sale at its Website the products of Leachco's competitors, as well as those of Leachco. It is a presumptuous and ill-founded claim, as will become evident presently.

## ARGUMENT

## I.    THE CLAIM OF PATENT INFRINGEMENT CANNOT BE SUSTAINED.

As argued to the Court previously and given the Court's construction of the relevant language of the sole independent claim of U.S. Patent No. 6,760,934 ("the '934 Patent"), there is and can be no infringement of that patent, either literally or under the doctrine of equivalents. Accordingly, the patent infringement counterclaim is amenable to resolution by summary judgment.

> To prevail under a theory of literal infringement, plaintiffs must prove that each and every limitation of independent claim 1 is matched exactly by a corresponding element in Brunswick's StealthCore I™ and II bowling balls . . . . Any deviation from the claim limitations precludes a finding of literal infringement. . . . If claim I is not infringed, it follows that none of its dependent claims are infringed. . . .

> Determining whether the StealthCore I™ and II bowling balls infringe

2

claim 1 of the '731 patent entails a two-step analysis. First, claim I must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused products to determine whether infringement has occurred. . . . The first step, claim construction, is a question of law. . . . The second step, applying the claim construction to the accused device, is a question of fact. Where, as here, the parties do not dispute any facts relevant to the question of literal infringement but disagree over the proper claim construction, the question of literal infringement collapses into claim construction and is amendable to summary judgment.

Zelinski v. Brunswick Corp., 996 F. Supp. 757, 759 (N.D. Ill. 1997) (citations omitted), aff'd,

185 F.3d 1311 (Fed. Cir. 1998); see also Zaidan v. Borg-Warner Corp., 281 F. Supp. 72, 75

(E.D. Pa. 1968) ("In my view there are no genuine issues of fact. The devices here in dispute are

relatively uncomplicated and capable of comprehension by persons of ordinary intelligence

without the aid of experts. . . . The only issues here involve construction of the claims of

plaintiff's patent. Construction of claims is properly a matter of law for the court.").

Here, a limitation of the independent claim is that the "crown" of the pillow be

semicircular in appearance and construction. (Mem. Op. 09/18/2008, at 7-8). It is not disputed

that the accused device has no such semicircular crown. Accordingly, there can be no

infringement, because the shape of the device is a limitation of the invention. In an analogous

situation, the court reasoned as follows in finding no infringement:

On summary judgment, the Court accepts Papst's characterization of the shape of the inner contour of the outlet side of the Accused Fans as having slightly flattened areas where the circular profile meets the four edges of the box fan. Even accepting Papst's characterization, however, the Accused Fans do not literally infringe Claim 29 because they do not have a profile that is "polygonal," i.e., consisting of "a closed figure consisting of straight lines joined end to end." It is undisputed that the Accused Fans have an outlet side that is substantially circular but for the slightly flattened transition areas that Papst contends are present along the four edges of the Accused Fans. It is therefore undisputed that the Accused Fans lack profiles on the outlet side that are in the shape of "a closed figure consisting of straight lines joined end to end." The Accused Fans do not literally infringe.

3

Papst Licensing GmbH & Co. KG v. Sunonwealth Elec. Mach. Ind. Co., 332 F. Supp. 2d 1142, 1149 (N.D. Ill. 2004).

Here, the structure of the accused device has no semi-circular crown, within the claim limitation of the '934 Patent. Thus, there can be no infringement, either literally or under the doctrine of equivalents. See Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 400 (Fed. Cir. 1994) ("An 'equivalent' of a claim limitation cannot substantially alter the manner of performing the claimed function. . . . Where an accused device performs substantially the same function to achieve substantially the same result but in a substantially different manner, there is no infringement under the doctrine of equivalents. . . . In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.").

## II.    THERE IS NO TRADEMARK INFRINGEMENT.

The burden of the nonmovant in the context of resisting a motion for summary judgment has been established as follows:

> Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325, 106 S. Ct. at 2553-54. The non-moving party then must make a sufficient showing as to the essential elements of his or her case that a reasonable jury could find in his or her favor.

Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378, 393 (M.D. Pa. 1995).

Whether the claim of infringement is made under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or the common law of unfair competition of Pennsylvania, the elements are substantially the same. They are as follows:

> [T]o succeed on these claims, Plaintiff must show that Defendant (1) uses a designation, (2) in interstate commerce, (3) in connection with goods, (4) which designation is likely to cause confusion, mistake, or deception as to (5) the

4

origin, sponsorship, or approval of Defendant's goods, and (6) Plaintiff has been or is likely to be damaged by these acts.

First Keystone Fed. Sav. Bank v. First Keystone Mort., 923 F. Supp. 693, 707 (E.D. Pa. 1996).

Count 2 of the counterclaim makes very little sense. Leachco's claim of infringement, it seems, derives from the fact that BabyAge at its Website offers for sale Leachco's products, as well as the products of competitors. There is no allegation of confusion regarding the source of Leachco's products or the source of the competitors' products. Instead, Leachco seems to be arguing that a claim of trademark infringement and/or unfair competition has been made out where BabyAge displays and offers for sale both Leachco's products and the products of its competitors. It is a bizarre theory. If that were the law, then one wonders how the local supermarket can lawfully sell in close proximity, indeed even on the same shelf, a cereal product from General Mills (Wheaties, for example) and a competing cereal product sold by Kraftfoods (Post Raisin Bran, for example). That the sales in question here are made via the Internet, as opposed to in the store, makes not the slightest difference. This is not one of those cases where it is alleged that the counterclaim-defendant uses the counterclaim-plaintiff's mark as a domain name or metatag to create confusion in the minds of consumers regarding the sponsorship of the site. Instead, BabyAge correctly and accurately identifies the source and origin of its own goods, the owner and operator of the Website, the goods offered for sale by Leachco, and the goods offered for sale by Leachco's (and BabyAge's) competitors.

So long as one does not misrepresent sponsorship or endorsement, it is perfectly lawful to use another's mark truthfully to advertise for sale the goods of the mark's owner.

> So long as buyers are not confused as to sponsorship, an independent used car dealer is free to use a mark, like CHEVROLET, to advertise that he sells used CHEVROLETS and repairs them. Similarly, the Ninth Circuit rejected the claim that it was a trademark infringement for a stock exchange to sell the stock of a corporation using the corporation's name without permission. "Surely a

5

> dealer in a product can describe it accurately by its tradename – shares of Golden
> Nugget common stock are not unlike second-hand BMW's or Chevrolets.
> Describing the product nondeceptively and by name brand has never been a
> violation of a manufacturer's trademark."

4 J. Thomas McCarthy, Trademarks and Unfair Competition § 25:50 (4th ed. 2008) (footnotes

omitted) (quoting Golden Nugget Inc. v. Am. Stock Exch., Inc., 828 F.2d 586, 591, 4 U.S.P.Q.2d

1466 (9th Cir. 1987)).

Nowhere on the Website, or anywhere else for that matter, does BabyAge represent itself

as "an exclusive Leachco distributor" or "an authorized Leachco distributor" or anything else that

would make Leachco's mark more prominent than those of any of the other trademarked brands

that BabyAge sells at its site. After all, it is not possible to advertise that one sells Leachco

products, without using the Leachco mark.

> House of Vacuums may use the KIRBY mark to advertise that it sells new
> KIRBY vacuums cleaners. Independent dealers and repair shops may use a mark
> to advertise truthfully that they sell or repair certain branded products so long
> as the advertisement does not suggest affiliation with or endorsement by the
> markholder.

Scott Fetzer Co. v. House of Vacuums, Inc., 381 F.3d 477, 484 (5th Cir. 2004); see Am. Home

Prods. Corp. v. Barr Labs., Inc., 656 F. Supp. 1058, 1068 (D.N.J.) ("The free flow of information

regarding the substitutability of products is valuable to individual consumers and to society

collectively, and by providing it a supplier engages in fair competition based on those aspects –

for example, price-in which the products differ."), aff'd, 834 F.2d 368 (3d Cir. 1987).

There is no such representation of affiliation or sponsorship of Leachco by BabyAge at

the Website, nor, to its credit, does Leachco claim that there is. Instead, Leachco premises its

claim of liability on the mere fact that one can find products of Leachco's competitors displayed

on the Website where Leachco's products also are displayed. Virtually every retailer in the

country displays its wares in precisely the same way, whether in the store or "virtually" on the Internet. One would think that Leachco would be well pleased to have its products presented in a context that encourages comparison by the savvy shopper with the products of Leachco's competitors. Indeed, Leachco makes only the most conclusory claim of injury in Counterclaim ¶ 26, since it benefits from having its products offered for sale via the Website. In short, BabyAge's use of Leachco's trademark is lawful as comprehended by the Lanham Act and the common law of unfair competition.

## CONCLUSION

Accordingly, BabyAge's Motion for Partial Summary Judgment should be granted, and Leachco's counterclaims should be dismissed with prejudice.

Respectfully submitted,

Date: October 7, 2008

/s/ Andrew J. Katsock, III, Esquire
ANDREW J. KATSOCK, III, ESQUIRE
Attorney I.D. 59011
Attorney for Plaintiff-Counterclaim Defendant,
BabyAge.com, Inc.

15 Sunrise Drive
Wilkes-Barre, PA 18705
Telephone & Facsimile No.: (570) 829-5884