IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BABYAGE.COM, INC. et al., | ) | |
| | ) | |
| Plaintiff-Counterclaim Defendants/ | ) | |
| Third Party Defendants, | ) | No. 3:07-cv-01600-ARC |
| | ) | |
| v. | ) | (Judge A. Richard Caputo) |
| | ) | |
| LEACHCO, INC. et al., | ) | (electronically filed) |
| | ) | |
| Defendant-Counterclaim Plaintiffs/ | ) | |
| Third Party Plaintiffs. | ) | |

**BRIEF OF LEACHCO, INC. AND JAMIE S. LEACH IN OPPOSITION
TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

We oppose the motion for partial summary judgment filed by Babyage.com (Doc.

84).

**A.      Babyage Has Infringed the '934 Patent.**

**1.      The Patent Claims Have Been Literally Infringed by Babyage.**

A patent is literally infringed when the accused product includes each and every

element of a patent claim. See *Mannesmann Demag Corp. v. Engineered Metal

Products Co.*, 793 F.2d 1279, 182 (Fed. Cir. 1986). Putting aside the "semi-circular

crown" element of claim 1 for the moment, Babyage's Cozy Comfort pillow includes

every other element of claims 1, 2 and 3 of the '934 patent. See Exhibit 1, ¶ 8; Exhibit

7. Babyage has not contended otherwise. See Doc. 86 at 2-3.

With regard to the "semi-circular crown" element, we respectfully reurge our

position that this element requires only that the base of the crown be semi-circular.

See Doc. 69 at 1-4. If that construction were to be accepted, then the "semi-circular

1

crown" element would be literally satisfied, because the base of the crown of the Cozy Comfort pillow is semi-circular. See Exhibit 1, ¶ 10 and Exhibit 7. With all claim elements literally present in the accused pillow, all claims of the '934 patent are literally infringed.

We recognize that the Court has not adopted our construction of "semi-circular crown," and has instead interpreted this term as meaning "the top of the pillow is shaped like a semi-circle." Doc. 80 at 8. Under such a construction, the "semi-circular crown" element would not literally satisfied by the accused pillow. Nonetheless, for purposes of the record, we reurge our claim construction and our contention that claims 1-3 have been literally infringed by the accused pillow.

## 2. The Patent Claims Have Been Infringed Under the Doctrine of Equivalents.

Even if there is no literal infringement, infringement may still be found under the doctrine of equivalents. See *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821-22 (Fed. Cir. 1992) ("If some limitations of the claim are not literally satisfied, infringement may be found in appropriate circumstances under the doctrine of equivalents"). Assuming that there is no literal infringement, the Babyage Cozy Comfort pillow nonetheless infringes under the doctrine of equivalents.

The Supreme Court explained the rationale of the doctrine of equivalents in *Graver Tank & Mfg. Co. v. Linde Air Products*, 339 U.S. 605 (1950):

One who seeks to pirate an invention ... may be expected to make unimportant and insubstantial changes to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit

no other would place the inventor at the mercy of verbalism and would be subordinating substance to form.

339 U.S. at 607. Infringement of a claim element exists under the doctrine of equivalents as long as the accused equivalent performs "substantially the same function in substantially the same way to obtain the same result." *Graver Tank*, 339 U.S. at 608. Equivalence is a question of fact, as to which Leachco and Mrs. Leach are entitled to a jury trial. See *Graver Tank*, 339 U.S. at 609.

As explained in Mrs. Leach's declaration, the function of the crown in claim 1 of the '934 is to provide a headrest that can support the head and neck of a woman using the pillow. The reason that the crown is semi-circular is so that it can better conform to the circular curve of the head and neck, for the best comfort and support. In order to accomplish this result, only the lower contour or base of the crown needs to be semi-circular, since this is the only contour of the crown that contacts the head and neck. Because a user's head and neck do not touch the upper contour of the crown, the shape of the upper contour is of no practical importance. See Exhibit 1, ¶ 9.

When a woman's head is resting on the crown of the Cozy Comfort pillow, the square-corner portions of the crown do not touch any portion of the woman's head or neck, and thus cannot provide either support or comfort. This is confirmed by Babyage's own photographic images showing how the Cozy Comfort pillow is used. Those images show the square corners of the crown far away from the head of the model resting on the pillow. The square corners of the upper contour of the crown do

not touch the model, and perform no function. See Exhibit 1, ¶ 10, and Exhibits 5 and 9.

If a woman should choose to rest her head on the overlapping toes of the Cozy Comfort pillow, the crown extends from side to side between the woman's legs. When the Cozy Comfort pillow is used in this way, the square corners of the crown again do not touch the user, and provide neither comfort nor support. This is once again confirmed by Babyage's own photographic images showing how the Cozy Comfort pillow is used. These images show that the square corners of the crown do not touch the model, and perform no function. See Exhibit 1, ¶ 11, and Exhibits 6 and 10.

The only difference between the crown of the Cozy Comfort pillow and a crown shaped like a semi-circle is that the upper portion of one has square corners, while the upper portion of the other is rounded. If the upper portion of the crown has square corners, those corners do not come into contact with the user. Because of that, the shape of the upper contour, whether rounded or with square corners, makes no difference in how the two pillows work and how the two pillows are used. See Exhibit 1, ¶ 13. The differences in shape between the semi-circular crown of claim 1 and the shape of the crown of the Cozy Comfort pillow are, in the words of the *Graver Tank* Court, "unimportant and insubstantial changes to conceal and shelter the piracy."

As Mrs. Leach explains in her declaration, the crown of the Cozy Comfort pillow performs substantially the same function as the semi-circular crown of claim 1: both crowns provide a soft surface for the head to rest on, while also supporting the user's head and neck. The crown of the Cozy Comfort pillow performs this function in

substantially the same way as the semi-circular crown of claim 1: both crowns have a central area where the head can rest, and both crowns have a semi-circular base that conforms to the user's head and neck. Moreover, the crown of the Cozy Comfort pillow produces the same result as the semi-circular crown of claim 1: both crowns provide comfort and support for the user's head and neck. See Exhibit 1, ¶ 12. Under *Graver Tank*, the crown of the Cozy Comfort pillow is equivalent to the "semi-circular crown" of claim 1.

Babyage has contended in conclusory terms that it does not infringe under the doctrine of equivalents, but has offered neither facts nor reasoned explanation as to why its crown is not equivalent. See Doc. 86 at 4. To the extent that Babyage is claiming that a particular **shape** defined in a claim cannot be equivalent to some other shape, Babyage's position is unsound: the Federal Circuit has repeatedly ruled otherwise.

For example, in *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324 (Fed. Cir. 2000), a patent claim required a signal having a "ramped" trailing edge, while the accused signal had a "double-step" trailing edge. The Federal Circuit reversed a summary judgment of non-infringement under the doctrine of equivalents, concluding that "a reasonable fact finder could find the differences between the allegedly infringing device and the claimed invention to be insubstantial." 208 F.3d at 1336. In making this ruling, the Federal Circuit specifically rejected the argument "that a claim limitation describing a specific shape of a claimed structure cannot be infringed under

the doctrine of equivalents by a differently shaped structure." 208 F.3d at 1337. The same principle holds true here.

Similarly, in *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005 (Fed. Cir. 2006), a patent claim required a ""spherically-shaped" portion, while the accused product has a "cylindro-conical shape." The Federal Circuit again reversed a summary judgment of non-infringement under the doctrine of equivalents, concluding that an issue of fact existed as to whether the difference in the two shapes was substantial. 469 F.3d at 1020. This ruling is fully consistent with ruling in *Graver Tank*, where the Supreme Court stressed: "If two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, **even though they differ in … shape**." 339 U.S. at 608 (emphasis added).

Like the patent owners in *Optical Disc* and *Depuy Spine*, we are not claiming that **any** shape is equivalent to a semi-circular crown. Instead, as explained above, a crown must have at least a semi-circular base to be equivalent to the semi-circular crown element of claim 1. Because the Babyage Cozy Comfort pillow has such a semi-circular base, its crown is equivalent to the "semi-circular crown" element of claim 1.

As discussed above, aside from the semi-circular crown element, the Babyage Cozy Comfort pillow literally satisfies every other element of claims 1-3 of the '934 patent. See Exhibit 1, ¶ 8; Exhibit 7. Because the crown of the Cozy Comfort pillow is, at a minimum, the equivalent of the semi-circular crown element of claim 1, the Cozy Comfort pillow infringes claims 1-3. See *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533,

1535 (Fed. Cir. 1991) (patent claim is infringed if each and every element in that patent claim, or its equivalent, is found in the accused product).

Because Babyage has both sold the Cozy Comfort pillow and offered it for sale, it has infringed claims 1-3 of the '934 patent. See Exhibit 1, ¶ 7; Exhibit 3; 35 U.S.C. § 271(a). Inasmuch Babyage has infringed the '934 patent, it is not entitled to summary judgment on counterclaim Count 1, which alleges such infringement.

**B.**     **Babyage Has Violated 15 U.S.C. § 1125(a)(1).**

Leachco's Count 2 counterclaim alleges a violation of 15 U.S.C. § 1125(a)(1), which prohibits false designations of origin, false and misleading descriptions of fact, and false and misleading representations likely to cause confusion, to cause mistake, and to deceive as to the origin of goods.

The particular § 1125(a) violation by Babyage here involved a classic "bait and switch" operation, whereby prospective customers were "baited" to a "featured brand" web page on Babyage's web site. This "featured brand" web page was purportedly dedicated to Leachco products, and was located at a web address that included Leachco's name and trademark:

http://www.babyage.com/brands/leachco.htm.

See Exhibit 1, ¶ 14. The Leachco "feature brands" web page prominently displayed Leachco's trademark and included descriptions of various categories of purported Leachco products, one of which was "Pregnancy Pillows". See Exhibit 1, ¶¶ 15-16, Exhibits 11 and 12. But once potential customers had gone for the "bait" of Leachco pregnancy pillows, Babyage "switched" them to **non**-Leachco pregnancy pillows.

The "Pregnancy Pillows" section of the Leachco "featured brand" page began as follows:

Pregnancy Pillows

Designed to ease the sleep discomfort associated with pregnancy. A maternity pillow helps to offer a relaxing night's rest. One of the great features on all pregnancy pillows is that they are comfortable. A mother needs her comfort and a pregnancy pillow will provide that. Most of the maternity pillows keep comfort as a top priority, but also strive to keep support at the forefront as well. A great pregnancy pillow will be able to creat [*sic*] support by aligning the hips, elevating the ankles and supporting the belly. One maternity pillow which can do this is the Today's Mom Cozy Comfort. It helps keep all of the major pain areas aligned, separating it from other, older versions of maternity pillows ....

Today's Mom Cozy Comfort was a clickable web link that, when clicked, took the reader to the Babyage web page that offered the non-Leachco Cozy Comfort pillow, a product that competes directly with Leachco's Back'n'Belly pregnancy pillow. See Exhibit 1, ¶¶ 6, 18. Another web link in the same "Pregnancy Pillows" section took the reader to yet another non-Leachco product. See Exhibit 1, ¶ 18.

The users of the Babyage web page were prospective and actual end users for baby and maternity merchandise: expectant and recent mothers, and their families. These are not highly sophisticated purchasers, although many of these end users will undoubtedly know the "Leachco" brand, which has been extensively advertised and promoted, and used for over 20 years on a wide variety of quality baby and maternity merchandise. But these end users will likely not be familiar with all of the secondary brand names (*e.g.*, Back'n'Belly) that Leachco uses, and does not use, on its products.

When these customers clicked the web link, "Today's Mom Cozy Comfort", they had no way of knowing what they were being offered was a **non**-Leachco product. See Exhibit 1, ¶¶ 2, 19.

One of the forms of confusion that is protected against under § 1125(a)(1) is "initial interest confusion." The Seventh Circuit has described this doctrine as follows:

> [T]he Lanham Act forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated ... This "bait and switch" of producers, also known as "initial interest" confusion, will affect the buying decisions of consumers in the market for the goods, effectively allowing the competitor to get its foot in the door by confusing consumers.

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996). The initial interest doctrine has often been applied in the context of web sites that lure potential customers with a well-known trademark, then switch the customer to some other brand.

One of the earliest web-based initial interest confusion cases was *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999). There, a competitive web site owner used another company's trademark, "Moviebuff," in the hidden "metatags" on his web pages. The "moviebuff" metatag caused the competitive web site to be picked up by persons using search engines to search for "moviebuff." Under these circumstances, the Ninth Circuit found actionable

initial interest confusion. 174 F.3d at 1065. The Ninth Circuit analogized the web site owner's actions to putting up misleading billboards:

> Using another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store. Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading -- "West Coast Video: 2 miles ahead at Exit 7" -- where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast. Nevertheless, the fact that there is only initial consumer confusion does not alter the fact that Blockbuster would be misappropriating West Coast's acquired goodwill.

174 F.3d at 1064.

Similarly, in *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002), the Seventh Circuit upheld an injunction against a business that used a competitor's name in the metatags in its web page, again because of initial interest confusion and the misappropriation of the competitor's goodwill. While the Third Circuit has apparently not yet considered any cases involving web-based initial interest confusion, that Court has expressly held that the initial interest confusion

doctrine can be actionable under the Lanham Act. See *Checkpoint Systems, Inc. v. Checkpoint Software Technologies, Inc.*, 269 F.3d 270, 295 (3rd Cir. 2001).

Here, Babyage did not merely embed hidden "Leachco" metatags in its web pages, as the web site owners did in *Brookfield* and *Promatek*. Instead, Babyage openly and prominently displayed Leachco's trademark on its "featured brand" Leachco web page, as a way of luring prospective customers. The Leachco "featured brand" web page led these prospective customers to believe that they were being offered Leachco products. However, the web links that Babyage embedded in the Leachco "featured brand" page instead switched these prospective competitors to web pages offering directly competitive, non-Leachco products, such as the Cozy Comfort pillow. These bait and switch tactics by Babyage have created actionable initial interest confusion, and have violated § 1125(a)(1).

In a declaration, Babyage's chief executive officer, Mr. Kiefer, claims to know of no instances of confusion between Leachco's products and those of Babyage. Doc. 85 at 2, ¶¶ 12-13. However, instances of actual confusion are not required to establish actionable initial interest confusion. "[T]hat confusion as to the source of a product or service is eventually dispelled does not eliminate the trademark infringement which has already occurred ... What is important is not the duration of the confusion, it is the misappropriation of [the trademark owner's] goodwill." *Promatek*, 300 F.3d at 812-13. See also *Brookfield*, 174 F.3d at 1062 (same).

Moreover, Leachco has never been afforded a fair opportunity to test the truth of Mr. Kiefer's unilateral claim that no instances of confusion have occurred. Because

Babyage operates the web site that has created initial interest confusion, Babyage is the party who have any evidence of actual confusion. Thus, over **five** months ago, Leachco sent Babyage requests for production seeking records relating to transactions involving its Cozy Comfort pillow. See Exhibit 14, ¶ 2. If instances of actual confusion have occurred, those instances would be documented in the requested records. For example, if a Babyage customer returned a Cozy Comfort pillow because he or she bought it mistakenly believing it was a Leachco pillow, the requested records would document that transaction. After long delays, Babyage agreed to produce these records, and in August was ordered by the Court to do so by September 26. See Exhibit 14, ¶¶ 3-6. Yet, despite a Court order to produce records responsive to the discovery requests, Babyage continues to refuse to produce these records. See Exhibit 14, ¶¶ 7.

"When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." See *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3rd Cir. 1995). Because Babyage has wrongfully refused to produce any of the records needed to test the veracity of Mr. Kiefer's claim of no confusion, a reasonable fact finder would be warranted in concluding that the withheld records contradict Mr. Kiefer's claim, and that instances of actual confusion have in fact occurred.

Because Babyage has wrongfully used Leachco's trademark to create actionable initial interest confusion, it has violated 15 U.S.C. § 1125(a)(1). Summary judgment on the Court 2 counterclaim should accordingly be denied.

Respectfully submitted,

s/ Gary Peterson
Gary Peterson
OK 7068
211 N. Robinson Ave., Suite 450 South
Oklahoma City, OK  73102
telephone:    (405) 606-3367
fax:              (866) 628-0506
email:          gp@garypeterson.com

Sean V. Kemether
PA 70816
Kelly Grimes Pietrangelo & Vakil, P.C.
P.O. Box 1048
Media, PA  19063-0848
telephone:    610-565-2669
fax:              610-565-0780
email:          skemether@kgpv.com

Attorneys for Defendant and Counterclaim Plaintiffs

CERTIFICATE OF SERVICE

I certify that I electronically transmitted this document to the Clerk using the ECF System so as to cause transmittal of a Notice of a Electronic Filing to the following ECF registrant:

    Andrew J. Katsock, III

Attorney for Babyage.com, Inc. and John M. Kiefer, Jr., on October 22, 2008.

                <u>s/ Gary Peterson</u>