UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BABYAGE.COM, INC., | : | |
| | : | |
| Plaintiff-Counterclaim Defendant | : | CIVIL ACTION NO. 3:07-CV-01600-ARC |
| | : | |
| v. | : | |
| | : | Judge A. Richard Caputo |
| LEACHCO, INC., | : | |
| | : | |
| Defendant-Counterclaim Plaintiff/ | : | Filed Electronically |
| Third Party Plaintiff | : | |
| | : | |
| and | : | |
| | : | |
| JAMIE S. LEACH, | : | |
| | : | |
| Counterclaim Plaintiff/ | : | |
| Third Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN M. KIEFER, JR., | : | |
| | : | |
| Third Party Defendant | : | |

---

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiff-Counterclaim Defendant, BabyAge.com, Inc. (hereinafter "BabyAge"), by

and though its attorney, Andrew J. Katsock, III, Esquire, hereby submits this Reply

Memorandum in Further Support of its Motion for Partial Summary Judgment.

### I.  THERE HAS BEEN NO INFRINGEMENT OF THE '934 PATENT.

Defendant-Counterclaim Plaintiff, Leachco, Inc. (hereinafter "Leachco"), concedes that

there has been no literal infringement of the '934 Patent, given the Court's construction of the

term "semi-circular crown" of the single independent claim of the patent.  While BabyAge

concedes no infringement of any element of the patent, it is enough that there has been no

infringement of any element of the independent claim to establish that there has been no literal infringement of the '934 Patent. There is no need to dwell on this aspect of the case further.

The declaration of Jamie Leach stretches the bounds of legitimate factual development, which is the purpose of a declaration/affidavit. The declaration does no more than restate the arguments of the declarant's counsel on the ultimate issue. See In re Wright, 999 F.2d 1557, 1563 (Fed. Cir. 1993) ("[W]e note that each of these affidavits fails in its purpose because each merely contains unsupported conclusory statements as to the ultimate legal question"). That said, the argument for infringement under the doctrine of equivalents carries no water. It is fundamental that a structure that is excluded from the definition of a claim cannot infringe under the doctrine of equivalents. See Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 400 (Fed. Cir. 1994) ("An 'equivalent' of a claim limitation cannot substantially alter the manner of performing the claimed function. . . . Where an accused device performs substantially the same function to achieve substantially the same result but in a substantially different manner, there is no infringement under the doctrine of equivalents. . . . In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.").

There are two fundamental flaws with Leachco's arguments. The first is that its proposed application of the doctrine of equivalents would read the limitation right out of the claim. If, as Leachco argues, it did not matter whether the "semi-circular crown" was in fact semi-circular, the limitation of the claim would have no meaning. This usage would not only vitiate the Court's interpretation of the language of the claim, but would also render meaningless a fundamental purpose of patents, which is to provide to the public notice of the precise elements of the invention so that competitors may design around it.

The [all limitations] rule holds that an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent. . . . This principle has two primary implications for the doctrine of equivalents.  First, the all limitations rule requires that equivalence be assessed on a limitation-by-limitation basis, as opposed to from the perspective of the invention as a whole. . . .  Second, an element of an accused product or process is not, as a mater of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation.  <u>Warner-Jenkinson</u>, 520 U.S. at 29, 117 S. Ct. 1040 ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); <u>Lockheed Martin Corp. v. Space Sys./Loral, Inc.</u>, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents."  (citation omitted)).

<u>Freedman Seating Co. v. Am. Seating Co</u>., 420 F.3d 1350, 1358-59 (Fed. Cir. 2005) (citations omitted).

The second, more basic flaw is that the element of the accused device that is at issue is not even equivalent, by the declarant's own testimony.  The declarant testifies that "[t]he purpose of the crown in my invention is to provide a headrest that can support the head and neck of a woman using the pillow."  (Decl. of Jamie Leach ¶ 9.)  Yet at the same time, she argues that "[w]hen a woman's head is resting on the crown of the Cozy Comfort pillow, the square-corner portions of the crown . . . cannot provide either support or comfort."  (Decl. of Jamie Leach ¶ 10.)  Thus, according to the declarant, only some of the crown need be semicircular, and because some, but not all of the crown of the accused device is semicircular, then it infringes on the patent.  The only circularity at work here is the declarant's (and her counsel's) argument.  This is an argument that was never made before, is completely at odds with the arguments that have been made, and that proposes to reinterpret a claim limitation that the Court already has interpreted.

The invention at issue here is a simple device that is hardly at the cutting edge of technology. One pregnancy pillow is different from another pregnancy pillow in relatively minor respects. Leachco argues that any pregnancy pillow will infringe its patent so long as the pillow is semicircular in any respect. Having limited the claim to a pillow having a semicircular crown, which the accused device does not have according to any reasonable interpretation possess, Leachco argues that it is enough that the bottom of the "crown" has a semicircular aspect. In the guise of applying the Court's interpretation of the claim, Leachco invites the Court to ignore the plain limitation of the claim. This, of course, the doctrine of equivalents will not allow. See Dolly, Inc., 16 F.3d at 398 ("The doctrine of equivalents cannot extend or enlarge the scope of the claims. . . . The doctrine of equivalents is not a license to ignore claim limitations.").

Leachco argues that the claim has functional and nonfunctional elements, and the Court should consider for infringement purposes only the functional elements of the claim. The problem, of course, is that the claim is limited and measured by the language used, and there is no distinction drawn in the claim between the pillow's functional and nonfunctional elements, particularly insofar as the semicircular crown is concerned. Having limited its claim to a pillow having a semicircular crown, Leachco now argues that any pillow will satisfy the claim, even if it has a square crown, rather than a semicircular crown, as long as the functional component of the crown is semicircular in some respect. That argument tortures the Court's entirely straightforward interpretation into meaninglessness.

The strained and wholly self-serving argument that Leachco has now concocted makes BabyAge's case for summary judgment even more compelling. No one disputes what a pregnancy pillow does, or how the two pillows at issue perform that function. There is no dispute about how the two pillows differ. The only issue is whether the pillows are equivalent in

light of the Court's interpretation of the term "semi-circular crown." There is no jury issue there. Leachco is making an argument now that it never made before in the context of the <u>Markman</u> hearing. It is wholly made up out of whole cloth, and Leachco labors to create a similarity where there is only a distinction. BabyAge's pillow, quite simply, has no semicircular crown, which is a limitation of the one independent claim of the invention. That being so, there can be no infringement.

## II.  THERE HAS BEEN NO TRADEMARK INFRINGEMENT.

Leachco's "initial interest confusion" argument comes in from left field. The argument betrays a complete misunderstanding of what constitutes initial interest confusion. It is doctrine that is applied only if and when a risk of confusion between two trademarks is exploited by the infringer to the disadvantage of the mark holder. One seeks in vain throughout Leachco's argument to see what confusion there is between its mark and any mark of BabyAge's. The reason is quite simple: There is none. It is elementary that there can be no actionable trademark infringement, unless there are trademarks that infringe. <u>See</u>, <u>for example</u>, <u>Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.</u>, 269 F.3d 270 (3d Cir. 2001) ("checkpoint" for security systems and "check point" for computer software); <u>SecuraComm Consulting, Inc. v. SecuraCom, Inc.</u>, 984 F. Supp. 286, 45 U.S.P.Q.2d 1576 (D.N.J. 1997) (confusingly similar use of marks "securacomm" and "securacom"), <u>rev'd on other grounds</u>, 166 F.3d 182, 49 U.S.P.Q.2d 1444 (3d Cir. 1999); <u>Elvis Presley Enters., Inc. v. Capece</u>, 141 F.3d 188 (5th Cir. 1998) ("Velvet Elvis" for a bar and the mark and name of the famous popular singer Elvis Presley); <u>Dorr-Oliver, Inc. v. Fluid-Quip, Inc.</u>, 94 F.3d 376 (7th Cir. 1996) (confusingly similar use of the mark owner's clamshell trade dress on competing products); <u>Eli Lilly & Co. v. Natural Answers, Inc.</u>, 233 F.3d

456 (7th Cir. 2000) (confusingly similar use of "Herbrozac" and owner's "Prozac" mark). Much less can there be an "initial interest confusion" if there is no confusion.

Confusion can be created in a print or visual medium or by means of a metatag or domain name. See, for example, Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036 (9th Cir. 1999) (video rental store chain's use of Internet domain name moviebuff.com infringed trademark owner's mark "moviebuff"). But the important point is that there must be a competitive use of two trademarks that are confusingly similar.

> In one of the first cases developing the initial interest confusion theory [Grotrian Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 365 F. Supp. 707, 717, 180 U.S.P.Q. 506 (S.D.N.Y. 1973), aff'd, 523 F.2d 1331, 186 U.S.P.Q. 436 (2d Cir. 1975)], the district court said that while the prospective buyer of an expensive piano is often a musical expert, he or she may be misled into considering the purchase of a GROTRIAN-STEINWEG piano because the prospective buyer initially is under the mistaken impression that the maker of the GROTRIAN-STEINWEG is somehow affiliated with the maker of the famous STEINWAY pianos. "Misled into an initial interest, a potential Steinway buyer may satisfy himself that the less expensive Grotrian-Steinweg is at least as good, if not better, than a Steinway. Deception and confusion thus work to appropriate [Steinway's] good will." The Second Circuit agreed that there was a likelihood of confusion, noting that the harm to Steinway was that a potential customer, thinking there was a connection, would be attracted by the GROTRIAN-STEINWEG name to consider that brand of piano, even though later investigation revealed that there was no connection with the makers of the STEINWAY.

4 J. Thomas McCarthy, Trademarks and Unfair Competition § 23:6 (4th ed. 2008).

Here, there is no use of any of BabyAge's trademarks that is confusingly similar to any of Leachco's marks, and Leachco does not claim that there is. It is a bizarre argument indeed to claim that a purchaser of a Cozy Comfort pillow that is identified only as a Cozy Comfort pillow could be confused into thinking it was a Leachco pillow, as Leachco apparently does. (Mem. in Opp'n at 12.) It is just as implausible to argue that it constitutes trademark infringement if a consumer buys a Pepsi from a vending machine thinking that it is a Coca Cola, when the Pepsi

mark is prominently displayed on the packaging of the product that the consumer purchased. Yet, that is just the peculiar wrinkle on trademark law that Leachco is trying to peddle in this case.

In the event there was initial interest confusion, ". . . a district court should employ the factors . . . announced in Interspace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983), to decide whether there is likelihood of confusion." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 358 (3d Cir. 2007). These factors are:

(1)  the degree of similarity between the plaintiff's trade dress and the allegedly infringing trade dress;

(2)  The strength of the plaintiff's trade dress;

(3)  the price of goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4)  the length of time the defendant has used its trade dress without evidence of actual confusion arising;

(5)  the intent of the defendant in adopting its trade dress;

(6)  the evidence of the actual confusion;

(7)  whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8)  the extent to which the targets of the parties' sales efforts are the same;

(9)  the relationship of the goods in the minds of consumers because of the similarity of functions; and

(10) other factors suggesting that the consuming public might expect the plaintiff to manufacture a product in the defendant's market, or that the plaintiff is likely to expand into that market.

Freedom Card, Inc. v. JP Morgan Chase & Co., 432 F.3d 463, 471 (3d Cir. 2005). "The Lapp test is a qualitative inquiry. Not all factors will be relevant in all cases; further, the different

factors may properly be accorded different weights depending on the particular factual setting.

McNeil 511 F.3d at 358 (internal citation omitted).  Since there is no "initial interest confusion"

here, the Court need not employ these factors.

### III.  CONCLUSION

Leachco has come up with no persuasive arguments for opposing summary judgment.

Accordingly, BabyAge's Motion for Partial Summary Judgment should be granted, and

Leachco's  counterclaims should be dismissed with prejudice.

Respectfully submitted,

Date:  <u>November 3, 2008</u>                      <u>/s/ Andrew J. Katsock, III, Esquire</u>
                                                   ANDREW J. KATSOCK, III, ESQUIRE
                                                   Attorney I.D. 59011
                                                   Attorney for Plaintiff-Counterclaim Defendant,
                                                   BabyAge.com, Inc.

15 Sunrise Drive
Wilkes-Barre, PA  18705
Telephone & Facsimile No.:  (570) 829-5884